IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS DIVISION

| | |
|---|---|
| STEVEN NEUMANN, | ) |
| Plaintiff, | ) |
| v. | ) Case No.: 3:15-cv-00076 |
| VILLAGE OF POCAHONTAS, ILLINOIS, MICHAEL LANTRIP, both individually and in his official capacity, JANE LANTRIP, both individually and in her official capacity, COUNTY OF BOND, ILLINOIS and JARED JOLLIFF, both individually and in his official capacity, | ) |
| Defendants. | ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

NOW COMES Plaintiff, STEVEN NEUMANN (hereinafter "Neumann"), by and through his attorneys, Sorling Northrup, Stephen F. Hedinger, of Counsel, and for his Complaint against Defendants, VILLAGE OF POCAHONTAS, ILLINOIS (hereinafter "Village of Pocahontas"), MICHAEL LANTRIP (hereinafter "Officer Lantrip"), both individually and in his official capacity, JANE LANTRIP (hereinafter "Jane Lantrip"), both individually and her official capacity, COUNTY OF BOND, ILLINOIS (hereinafter "Bond County"), and JARED JOLLIFF (hereinafter "Deputy Jolliff"), both individually and in his official capacity (hereinafter collectively referred to as "Defendants"), alleges as follows:

## Jurisdiction and Venue

1. This action is brought pursuant to 42 U.S.C. § 1983 to redress the deprivation under color of law of Neumann's rights as secured by the United States Constitution, among other claims.

2. This Court has jurisdiction of the action pursuant 28 U.S.C. § 1331 and 28 U.S.C. § 1367, and venue is proper under 28 U.S.C. § 1391(b). On information and belief, all parties reside in this judicial district, and the events giving rise to the claims asserted herein occurred within the limits of the Village of Pocahontas, Bond County, Illinois, which is located in this judicial district.

## Facts Common to All Counts

3. On Sunday, January 26, 2014, Neumann was a resident of Pocahontas, Bond County, Illinois, and resided at 401 Jaycee within that municipality.

4. Defendant Michael Lantrip ("Officer Lantrip"), sued herein in both his individual and his official capacity, is an individual employed at all relevant times as an Animal Control Officer for the Village of Pocahontas, Illinois. At all times relevant hereto, Officer Lantrip was acting under color of law and within the course and scope of his employment.

5. Defendant Jane Lantrip ("Jane Lantrip") is the wife of Officer Lantrip, and at all relevant times acted for and on behalf of the Village of Pocahontas as a volunteer, and in that capacity followed instructions and directions of Officer Lantrip as well as other persons acting under authority of the Village of Pocahontas.

6. Defendant Village of Pocahontas is a municipal corporation incorporated under the laws of the State of Illinois located in Bond County, and operates the Village of Pocahontas

Animal Control Office, and at all times relevant to the events complained herein, was the employer of Officer Lantrip, and also directed the volunteer activities of Jane Lantrip.

7. Defendant Jared Jolliff ("Deputy Jolliff"), sued herein in both his individual and his official capacity, is an individual employed at all relevant times as a deputy sheriff for the Bond County Sheriff's Department, which is a part of the County of Bond, Illinois. At all times relevant hereto, Deputy Jolliff was acting under color of law and within the course and scope of his employment.

8. Defendant County of Bond ("Bond County") is a body politic, a duly formed county within the State of Illinois, and operates the Bond County Sheriff's Department, and at all times relevant to the events complained herein, was the employer of Deputy Jolliff.

9. Prior to and on January 26, 2014, Neumann was the owner of a dog named "Ruger."

10. Ruger was a much loved family pet, who brought joy and happiness to Neumann.

11. On January 26, 2014, Neumann was out of town for the day. He left Ruger in a fenced enclosure in his yard, under the care of a neighbor, but sometime during the day Ruger was able to get out of the enclosure.

12. Ruger made his way to and into a small outbuilding located at 10 Kavanaugh Street in the Village of Pocahontas, which is just one block south of Neumann's residence. The outbuilding was upon property owned by the mother of a Village of Pocahontas Council member. The mother was not at home during the time Ruger was in her outbuilding on January 26, 2014.

13. On January 26, 2014, the Village of Pocahontas Council member whose mother owned the outbuilding became aware that Ruger was in the outbuilding, and he contacted Gino

Feazel, Chief of Police for the Village of Pocahontas, and demanded Ruger's removal. Gino Feazel then called Officer Lantrip and directed him to 10 Kavanaugh Street, and instructed him to bring a gun with which to shoot Ruger. Officer Lantrip arrived armed with a .22 caliber rifle, along with his wife, Jane Lantrip, who accompanied Officer Lantrip to assist him with his official duties. They discovered Ruger behind some boxes in the outbuilding.

14. Officer Lantrip and Jane Lantrip called Ruger but he did not come because of fear and unfamiliarity with the strangers.

15. Jane Lantrip and the Village of Pocahontas council member assisted Officer Lantrip in confining Ruger to the outbuilding, and ensuring that he did not leave the outbuilding.

16. Village of Pocahontas Police Chief Gino Feazel also called for Defendant Deputy Jared Jolliff to assist in apprehending Ruger, and Feazel informed the Bond County dispatcher that Ruger should be killed because he was "mean." Deputy Jolliff arrived, and he also stated that he thought Ruger should be killed. Deputy Jolliff decided that the weapons then in his possession were too big to kill Ruger without endangering nearby residences, and so Deputy Jolliff instructed Officer Lantrip to use his .22 rifle to execute Ruger.

17. Officer Lantrip entered the outbuilding and then fired two shots to Ruger's head, needlessly killing him.

18. On January 26, 2014, all three of Officer Lantrip, Jane Lantrip, and Deputy Jolliff, as well as Village of Pocahontas Police Chief Gino Feazel and the Village of Pocahontas council member who reported Ruger's presence in the outbuilding, were specifically aware that Ruger belonged to, and was the pet of, Neumann, and all also were specifically aware, and had actual knowledge of, the location of Neumann's Village of Pocahontas home at 401 Jaycee. They also

knew or had access to Neumann's mobile telephone number, and knew how to contact numerous of Neumann's close relatives.

19. Numerous other alternatives were available to Officer Lantrip, Jane Lantrip and Deputy Jolliff on January 26, 2014, to capture or neutralize Ruger or to peacefully return him to Neumann's home, instead of summarily executing him. Among other things, Officer Lantrip, Jane Lantrip, and Deputy Jolliff could and should have done one or more of the following:

    a. Called Neumann and asked him to retrieve his dog;

    b. Allowed Ruger to leave the outbuilding and return to his home one block away;

    c. Sealed off the outbuilding so as to contain Ruger until Neumann or other assistance could be contacted;

    d. Called for backup including but not limited to the Bond County animal control authorities or other public safety officers, or a nearby veterinarian, to assist with physically containing Ruger;

    e. Used a taser, or chemical mace, or a tranquilizer, or some other non-lethal means such as a fire extinguisher, to subdue Ruger.

20. Shooting Ruger two times in the head was not necessary to contain and control Ruger, but in fact was intended to, and did, result in the destruction by death of Ruger. Other non-lethal means of subduing Ruger were reasonably available.

21. At the time he was inside the outbuilding on January 26, 2014, Ruger did not pose a hazard or danger to anyone. To any extent Officer Lantrip, Jane Lantrip and/or Deputy Jolliff, and/or anyone else, held any subjective fear or belief that Ruger posed a danger to himself or herself, such potential danger was solely and exclusively the result of the unnecessarily and unreasonably aggressive actions of Officer Lantrip, Jane Lantrip and Deputy Jolliff, which had

the foreseeable effect of causing Ruger to behave defensively for his own protection and well-being.

22. Ruger's value to Neumann was incalculable.

### Count I – 42 U.S.C. § 1983: Fourth Amendment Violation
### (Against Officer Lantrip and Jane Lantrip)

23. As and for paragraph 23, Neumann re-alleges and incorporates by reference paragraphs 1 – 22 above, inclusive, as if fully set forth herein.

24. The actions of Officer Lantrip, Jane Lantrip and Deputy Jolliff in cornering, then shooting and killing Ruger, done while acting under color of law, constituted a seizure of Neumann's property in violation of the United States Constitution.

25. The misconduct described in this Count of Deputy Lantrip, Jane Lantrip and Officer Jolliff was objectively unreasonable and was undertaken intentionally and with willful indifference to Neumann's constitutional rights.

26. The misconduct described in this Count was undertaken with malice, willfulness and/or reckless indifference to the rights of others, specifically the rights of Neumann in his property.

27. As a result of the illegal seizure conducted by Officer Lantrip, Jane Lantrip and Deputy Jolliff, Neumann has suffered serious and severe injury, including emotional anguish, pain, and suffering.

WHERERFORE Plaintiff, STEVEN NEUMANN, respectfully requests that this Court enter judgment in his favor and against Officer Lantrip and Jane Lantrip, in both their individual and official capacities, on Count I of his complaint, and award to him damages in an amount deemed just, including costs of this action, including attorney fees and punitive damages where

available by law, and for any other relief this Court deems just and appropriate under the circumstances.

## PLAINTIFF DEMANDS TRIAL BY JURY AS TO COUNT I

### Count II – 42 U.S.C. § 1983; Fourth Amendment Violation

### (Against the Village of Pocahontas)

28. As and for paragraph 28, Neumann re-alleges and incorporates by reference paragraphs 1 - 27 above, inclusive, as if fully set forth herein.

29. Officer Lantrip's and Jane Lantrip's misconduct, described above, was taken pursuant to a policy and practice of the Village of Pocahontas in that:

   a. As a matter of both policy and practice, the Village of Pocahontas is the moving force behind the very type of misconduct at issue by failing to train, supervise, and control its animal control officers and volunteers who assist the animal control officers, such that its failure to do so manifests deliberate indifference.

   b. Defendant Village of Pocahontas is charged with duties including the adoption and promulgation of rules and regulations for the governance of the Village of Pocahontas.

   c. Defendant Village of Pocahontas employs policy makers to train and supervise its animal control officers and volunteers who assist the animal control officers regarding the use of force, and regarding the use of firearms.

   d. At all times relevant to this complaint, Officer Lantrip was acting under the direction and control of the policy makers for the Village of Pocahontas, including but not limited to Village Council Members and the Chief of Police, and Jane Lantrip was acting under the direction and control of Officer Lantrip.

e. At all times relevant to this Complaint, and acting under color of law and pursuant to their policy making authority for the Village of Pocahontas, the policy makers charged with policy making knowingly, recklessly, and maliciously, or with deliberate indifference and in bad faith to the rights of the citizens and callous disregard of Neumann's rights, failed to instruct, train, supervise, and control its animal control officers and volunteers who assist the animal control officers in their duties to refrain from the acts alleged in this complaint, and/or with regard to proper and appropriate means of addressing situations involving domestic pets, and particularly involving pet dogs.

f. Officer Lantrip was not adequately trained. He had been the Village Animal Control Officer for only a few weeks prior to January 26, 2014, and he had no prior experience with animal control methods and procedures, and he had received virtually no training from the Village of Pocahontas prior to that date.

g. Jane Lantrip was not adequately trained. Prior to January 26, 2014, she had no training or prior experience with animal control methods and procedures.

h. Animal control officers, including those employed by the Village of Pocahontas, and volunteers who assist them, are frequently and routinely called upon as part of their official duties to interact with domestic animals, including dogs. Despite the routine nature and frequency of such contacts, the Village of Pocahontas failed to train Officer Lantrip and Jane Lantrip with respect to the proper way to interact with pets, including but not limited to the not-unusual circumstance of a wandering dog.

  i.  The serious harm to Neumann was the obvious and expected consequence of the Village of Pocahontas's failure to train and supervise its animal control officers and assisting volunteers.

  j.  As a direct and proximate result of the above acts of the Village of Pocahontas, Neumann suffered damages in connection with the deprivation of his constitutional and statutory rights guaranteed by the Fourth Amendment to the Constitution of the United States and protected by 42 U.S.C. § 1983.

30. As a result of Officer's Lantrip's and Jane Lantrip's unjust seizure, Neumann has suffered emotional injuries.

WHEREFORE Plaintiff, STEVEN NEUMANN, respectfully requests that this Court enter judgment in his favor and against the Village of Pocahontas on Count II of his Complaint, and award to him damages in an amount deemed just, including costs of this action, and including attorney fees and punitive damages where available by law, and for any other relief this Court deems just and appropriate under the circumstances.

**PLAINTIFF DEMANDS TRIAL BY JURY AS TO COUNT II**

### Count III – 42 U.S.C. § 1983; Fourth Amendment Violation
### (Against the Officer Jolliff)

31. As and for paragraph 31, Neumann re-alleges and incorporates by reference paragraphs 1 – 30 above, inclusive, as if fully set forth herein.

32. The actions of Deputy Jolliff assisting and instructing Officer Lantrip and Jane Lantrip to corner and trap, and then to shoot and kill Ruger, done while acting under color of law, constituted a seizure of Neumann's property in violation of the United States Constitution.

33. The misconduct described in this Count was objectively unreasonable and was undertaken intentionally and with willful indifference to Neumann's constitutional rights.

34. The misconduct described in this Count was undertaken with malice, willfulness and/or reckless indifference to the rights of others, specifically the rights of Neumann in his property.

35. As a result of Deputy Jolliff's contribution to the illegal seizure of Ruger, Neumann has suffered serious and severe injury, including emotional anguish, pain, and suffering.

WHERERFORE Plaintiff, STEVEN NEUMANN, respectfully requests that this Court enter judgment in his favor and against Deputy Jolliff, in both his individual and official capacity, on Count III of his complaint, and award to him damages in an amount deemed just, including costs of this action, including attorney fees and punitive damages where available by law, and for any other relief this Court deems just and appropriate under the circumstances.

**PLAINTIFF DEMANDS TRIAL BY JURY AS TO COUNT III**

**Count IV – 42 U.S.C. § 1983; Fourth Amendment Violation**
**(Against the County of Bond)**

36. As and for paragraph 36, Neumann re-alleges and incorporates by reference paragraphs 1 – 35 above, inclusive, as if fully set forth herein.

37. Deputy Jolliff's misconduct, described above, was taken pursuant to a policy and practice of Bond County in that:

   a. As a matter of both policy and practice, Bond County is the moving force behind the very type of misconduct at issue by failing to train, supervise, and control its officers, such that its failure to do so manifests deliberate indifference.

   b. Bond County is charged with duties including the adoption and promulgation of rules and regulations for the governance of the Bond County and the municipalities located therein.

c. Bond County employs policy makers to train and supervise the police officers employed by its Sheriff's Department regarding the use of force and regarding the use of firearms.

d. At all times relevant to this complaint, Deputy Jolliff was acting under the direction and control of the policy makers for Bond County.

e. At all times relevant to this complaint, and acting under color of law and pursuant to their policy making authority for Bond County, the policy makers charged with policy making knowingly, recklessly, and maliciously, or with deliberate indifference and in bad faith to the rights of the citizens and callous disregard of Neumann's rights, failed to instruct, train, supervise, and control its police officers in their duties to refrain from the acts alleged in this Complaint, and/or with regard to proper and appropriate means of addressing situations involving domestic pets, and particularly involving pet dogs.

f. County police officers, including those employed by Bond County, are commonly and routinely called upon as part of their official duties to interact with domestic animals, including dogs. Despite the routine nature and frequency of such contacts, the Bond County failed to train Deputy Jolliff with respect to the proper way to interact with pets, including but not limited to the not-unusual circumstance of a wandering dog.

g. The serious harm to Neumann was the obvious and expected consequence of Bond County's failure to train and supervise its officers.

h. As a direct and proximate result of the above acts of Bond County, Neumann suffered damages in connection with the deprivation of his constitutional and

statutory rights guaranteed by the Fourth Amendment to the Constitution of the United States and protected by 42 U.S.C. § 1983.

38. As a result of Deputy's Jolliff's contribution to the unjust seizure of Ruger, Neumann has suffered emotional injuries.

WHEREFORE Plaintiff, STEVEN NEUMANN, respectfully requests that this Court enter judgment in his favor and against the County of Bond on Count IV of his Complaint, and award to him damages in an amount deemed just, including costs of this action, and including attorney fees and punitive damages where available by law, and for any other relief this Court deems just and appropriate under the circumstances.

**PLAINTIFF DEMANDS TRIAL BY JURY AS TO COUNT IV**

### Count V – Conversion –State Law Claim
### (Against Officer Lantrip, Jane Lantrip, and Deputy Jolliff)

39. As and for paragraph 39, Neumann re-alleges and incorporates by reference paragraphs 1 – 38 above, inclusive, as if fully set forth herein.

40. By shooting and killing Ruger with no lawful reason or justification, Officer Lantrip exerted deliberate and wrongful control over Neumann's dog.

41. By directing and assisting Officer Lantrip in shooting Ruger, Deputy Jolliff exerted deliberate and wrongful control over Neumann's dog.

42. By assisting Officer Lantrip in shooting Ruger, Jane Lantrip exerted deliberate and wrongful control over Neumann's dog.

43. Neumann owned Ruger, and he had an immediate right to possession of his dog.

44. As a direct and proximate result of the actions of Officer Lantrip, Jane Lantrip and Deputy Jolliff, Neumann suffered the permanent loss of his property, which had both actual and sentimental value.

WHEREFORE Plaintiff, STEVEN NEUMANN, respectfully requests that this Court enter judgment in his favor and against Officer Lantrip, Jane Lantrip and Deputy Jolliff, in both their individual and official capacities, on Count V of his complaint, and award to him damages in an amount deemed just, including costs of this action, and punitive damages where available by law, and for any other relief this Court deems just and appropriate under the circumstances.

**PLAINTIFF DEMANDS TRIAL BY JURY AS TO COUNT V**

### Count VI – Respondeat Superior
### (Against the County of Bond)

45. As and for paragraph 45, Neumann re-alleges and incorporates by reference paragraphs 1 – 44 above, inclusive, as if fully set forth herein.

46. At all times while committing the acts alleged in the preceding paragraphs and Counts, Deputy Jolliff was an employee and an agent of Bond County, and at all relevant times acted within the course and scope of his employment.

47. Bond County is liable as principal for all torts committed by its employees and agents in the course and scope of performing their work, including for conversion.

WHEREFORE, Plaintiff, STEVEN NEUMANN, respectfully requests that this Court enter judgment in his favor and against the County of Bond on Count VI of his complaint, and award to him damages in an amount deemed just, including costs of this action, and punitive damages where available by law, and for any other relief this Court deems just and appropriate under the circumstances.

**PLAINTIFF DEMANDS TRIAL BY JURY AS TO COUNT VI**

### Count VII – Respondeat Superior
### (Against the Village of Pocahontas)

48. As and for paragraph 48, Neumann re-alleges and incorporates by reference paragraphs 1 – 47 above, inclusive, as if fully set forth herein.

49. At all times while committing the acts alleged in the preceding paragraphs and Counts, Officer Lantrip was an employee and an agent of the Village of Pocahontas, and at all relevant times acted within the course and scope of his employment.

50. The Village of Pocahontas is liable as principal for all torts committed by its employees and agents in the course and scope of performing their work, including for conversion.

WHEREFORE, Plaintiff, STEVEN NEUMANN, respectfully requests that this Court enter judgment in his favor and against the Village of Pocahontas on Count VII of his complaint, and award to him damages in an amount deemed just, including costs of this action, and punitive damages where available by law, and for any other relief this Court deems just and appropriate under the circumstances.

**PLAINTIFF DEMANDS TRIAL BY JURY AS TO COUNT VII**

### Count VIII – Humane Care for Animals Act
### (Against Officer Lantrip and Deputy Jolliff)

51. As and for paragraph 51, Neumann re-alleges and incorporates by reference paragraphs 1 – 50 above, inclusive, as if fully set forth herein.

52. By working together to shoot and kill Ruger, Officer Lantrip, Jane Lantrip and Deputy Jolliff individually and collectively intentionally committed an act that caused Ruger to suffer serious injury and death.

53. Ruger was considered by Neumann to be, and Ruger was, a pet.

54. Neumann had a right of ownership in Ruger on January 26, 2014.

55. Neumann suffered emotional distress as a direct and proximate result of the killing of Ruger.

56. Pursuant to 510 ILCS 70/16.3, Neumann is entitled to punitive or exemplary damages of not less than $500 but not more than $25,000 for each act of abuse to which Ruger was subjected from Officer Lantrip, Jane Lantrip and Deputy Jolliff. Also pursuant to that statute, Neumann is entitled to his reasonable attorney's fees and costs actually incurred in prosecuting this action.

57. Also pursuant to 510 ILCS 70/16.3, this Court is authorized, and Neumann hereby asks this Court, to enter one or more injunctive orders against Officer Lantrip, Jane Lantrip and Deputy Jolliff to protect animals from further acts of abuse, neglect, or harassment by these Defendants.

WHEREFORE Plaintiff, STEVEN NEUMANN, respectfully requests that this Court enter judgment in his favor and against Officer Lantrip, Jane Lantrip, and Deputy Jolliff in their individual capacities on Count VIII of his complaint, and award to him damages sufficient to compensate him for the expenses he incurred and the emotional distress he has suffered, and to award punitive or exemplary damages as allowed by statute, and to enter an order enjoining Defendants from committing similar acts of aggravated cruelty to animals in the future, and to award Plaintiff his attorney's fees and his costs in bringing this action, and for any other relief this Court deems just and appropriate under the circumstances.

**PLAINTIFF DEMANDS TRIAL BY JURY AS TO COUNT VIII**

STEVEN NEUMANN, Plaintiff,

Date: January 23, 2015          By: _____
                                    One of His Attorneys

Sorling Northrup
Stephen F. Hedinger, of Counsel
One North Old State Capitol Plaza, Suite 200
Post Office Box 5131
Springfield, IL 62705
Telephone: (217)544-1144
Facsimile: (217)522-3173
E-Mail: sfhedinger@sorlinglaw.com