IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVEN NEUMANN, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 15-CV-76 –SMY-DGW |
| | ) |
| VILLAGE OF POCAHONTAS, | ) |
| ILLINOIS, MICHAEL LANTRIP, both | ) |
| individually and in his official capacity, | ) |
| JANE LANTRIP, both individually and in | ) |
| her official capacity, | ) |
| | ) |
| Defendants. | ) |

# MEMORANDUM AND ORDER

**YANDLE, District Judge:**

Plaintiff Steven Neumann brings this action against Defendants Michael Lantrip, Jane Lantrip and the Village of Pocahontas, Illinois, alleging constitutional and state law violations arising out of the shooting death of Plaintiff's dog. Pending before the Court is Defendants' Motion for Summary Judgment (Doc. 39) and Plaintiff's Partial Motion for Summary Judgement (Doc. 43). The Court has carefully considered the briefs and evidence submitted by the parties. For the reasons set forth below, Defendants' Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**. Plaintiff's Partial Motion for Summary Judgment is **DENIED**.

## BACKGROUND

Plaintiff Steven Neumann owned three pit bull dogs: Ruger, Trixie and Mr. Sniffers (Doc. 40-1, p. 15). On January 25, 2014, Plaintiff went out of town. He asked his neighbor to watch the dogs and left them in their fenced pen next to his house. *Id*.

1

Around 10:00 a.m. on January 26, 2014, Adam Evans' neighbor reported to Evans that two of Plaintiff's dogs were loose and running around near Evans' mother's home (Doc. 40-10, pp. 11- 13). Evans recognized Plaintiff's dogs because he had seen them running loose on multiple occasions. *Id.* pp. 11-12. When the dogs ran loose, usually Plaintiff captured them or the dogs would run back to Plaintiff's home. *Id*. On occasion, the animal control officer would help capture the dogs. *Id*. According to Plaintiff, his dogs had gotten out of his yard about eight times over the years (Doc. 40-1, pp. 22-23). Evans investigated and saw two dogs running in and out of his mother's garage area. *Id*. at pp. 15-18.

Evans contacted Gino Feazel, the Pocahontas Chief of Police. *Id*. at p. 18. Feazel in turn contacted Michael Lantrip, the Village of Pocahontas' animal control officer and instructed him to attend to Plaintiff's dogs (Doc. 40-2, pp. 74-75). Feazel also contacted the Bond County Sheriff's Department and instructed the dispatcher to send officers because "Neumann's pit bulls are out and destroying stuff at Adam Evans' mom's house. They can be shot because they are mean" (Doc. 43-6, p. 15). The dispatcher contacted Jared Jolliff, the Bond County deputy on duty. *Id*. at p. 17. The dispatcher did not tell Jolliff to shoot Plaintiff's dogs (Doc. 40-8, p. 33). Feazel also spoke to Jolliff and warned him that Plaintiff's dogs were aggressive and recommended that Jolliff take care in handling the dogs (Doc. 40-8, pp. 10-11). Feazel told Jolliff that one of Plaintiff's dogs was suspected of attacking a small dog on another occasion. *Id*. at p. 11; *see also* Doc. 40-1, pp. 27-28.

Lantrip and his wife, Jane, were preparing to go shopping when he received the call from Feazel (Doc. 40-20, p. 85). As the Lantrips were on their way to get groceries, Michael Lantrip informed Jane that they would go by and pick up the loose dog, return the dog to its owner and

then go shopping. *Id*. at p. 17. Jane Lantrip rarely went with her husband on animal control jobs. *Id*.

The Lantrips met Evans at the garage (Doc. 40-20, pp. 87-88). Michael Lantrip approached the garage, but could not see the dogs. *Id*. The garage was a mess. *Id*. There was no door in the front. *Id*. Rather, Evans' mother utilized tarps to keep people from looking into the garage. *Id*. Inside the garage, Lantrip saw boxes everywhere. *Id*. There was no light in the garage. *Id*. at p. 88. Michael Lantrip lifted the side of the tarp and saw one of Plaintiff's dogs. *Id*. at pp. 89-90. The dog seemed skittish and barked a bit. *Id*. at p. 85. Lantrip described her as more nervous and scared than anything else. *Id*. From the truck, Jane Lantrip attempted to coax the dog out. *Id*. The dog ran out of the garage and headed back towards Plaintiff's home. *Id*. at pp. 89-90. Believing both dogs had returned to Plaintiff's home, Michael Lantrip went to Plaintiff's house to inform him that his dogs were running around. *Id*. at p. 91. Plaintiff was not home, so Lantrip returned to the garage area. *Id*.

As Evans approached the garage to see if there was any damage, he discovered that Ruger was still in the garage. Ruger put his front legs down, growled, showed his teeth and the hair stood on the back of his neck. *Id*. at p. 92. Lantrip described him as "not as friendly as the first dog" and "posturing like he wanted to lunge." *Id*. at p. 93. Evans described Ruger as "being aggressive" and "snapping his teeth" (Doc. 40-10, pp. 21, 28). Evans got out of the way and Lantrip attempted to use the catchpole to capture Ruger. *Id*. Lantrip asked his wife to call Feazel to dispatch Bond County to the scene. *Id*. Feazel informed Jane that County was already on its way. *Id*. p. 92. Lantrip continued trying to snare Ruger with the catchpole. *Id*. at p. 93. Evans could not see what was going on, but could hear Ruger growling at Lantrip (Doc. 40-10, p. 27). Unsuccessful, the Lantrips and Evans waited for Jolliff to arrive (Doc. 40-10, p. 28).

3

After Lantrip ceased his attempts to snare Ruger, the dog calmed down and retreated to the back of the garage. *Id*. at p. 94.

Jolliff arrived at the scene and went to Plaintiff's house to attempt to make contact with him (Doc. 40-8, p. 13). Plaintiff's other loose dog was sitting on the porch and would not allow Jolliff to approach the house (Doc. 40-8, p. 13). Jolliff believed Plaintiff was home because his truck was in the driveway. Jolliff sounded his air horn in an effort to get Plaintiff's attention. When he did not get a response, Jolliff returned to the garage area.

Jolliff and Michael Lantrip discussed the situation again and Lantrip attempted once more to snare Ruger with the catchpole (Doc. 40-20, p. 97). Ruger continued to growl and posture like he was going to lunge. *Id*. After several unsuccessful attempts, Jolliff told Michael Lantrip that Ruger was a vicious dog and ordered him to put Ruger down. *Id*. Evans expressed his opinion that they could not just leave Ruger in the garage (Doc. 40-10, p. 34). Evans was worried about his mother or an elderly neighbor getting attacked. *Id*. Jolliff did not want to use his own weapons, which were high caliber. *Id*. at pp. 97-98. Lantrip had brought his .22 rifle. *Id*. Jolliff and Michael Lantrip agreed to use the rifle to shoot Ruger. *Id*. Lantrip walked into the garage, moved some boxes to get a clean shot and shot Ruger twice in the head. *Id*. At no time had Ruger bitten or attempted to bite anyone present. *Id*. at p. 108.

Jane Lantrip did not witness much of the incident (Doc. 40-19, pp. 23-24). She was on the other side of the truck or in the truck for the majority of the time. *Id*. She was not a part of the discussions regarding shooting Ruger. *Id*. She never went into the garage. *Id*. She only saw the tarps and occasionally saw Michael and Evans jump back when Ruger barked. *Id*.

Plaintiff returned home around noon on the day of the incident and, upon learning that Ruger was loose, began searching for him (Doc. 40-1, pp. 38-39). After searching for Ruger, Plaintiff called the Sheriff's Department and learned that Ruger had been shot. *Id*.

Michael Lantrip trained with the former animal control officer, Brian Handegan (Doc. 40-20, p. 78). Lantrip learned how to use the catchpole with Handegan. *Id*. He did not have specific training in the use of force on animals. *Id*. pp. 64, 67.

## DISCUSSION

Summary judgment is proper only if the moving party can demonstrate there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); s*ee also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004).

Cross-motions for summary judgment do not automatically mean that all questions of material fact have been resolved. *Franklin v. City of Evanston,* 384 F.3d 838, 842 (7th Cir.2004). The Court must evaluate each motion independently, making all reasonable inferences in favor of the nonmoving party with respect to each motion. *Id.* at 483. Here, the parties do not dispute the material facts contained in their respective motions. Accordingly, the Court will evaluate the merits of both motions.

**Fourth Amendment Violation**

Both parties move for summary judgment on Plaintiff's claims under 42 U.S.C. § 1983 against Michael Lantrip, Jane Lantrip and the Village of Pocahontas for the unlawful seizure of

Ruger in violation of the Fourth Amendment. Section 1983 does not serve as an independent source of substantive rights; rather it provides "a method for vindicating federal rights elsewhere conferred." *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979). Traditionally, the requirements for relief under § 1983 have been articulated as: (1) a violation of rights protected by the Constitution or created by federal statute, (2) proximately caused (3) by conduct of a "person" (4) acting under color of state law. *See, e.g., Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981), *overruled on other grounds, Daniels v. Williams,* 474 U.S. 327, 328, 106 S.Ct. 662, 663, 88 L.Ed.2d 662 (1986).

*A. Jane Lantrip*

Plaintiff asserts that Jane Lantrip, by assisting and participating in the events leading to Ruger's death, acted under color of law and violated Plaintiff's Fourth Amendment rights. Defendants counter that Jane Lantrip was not an employee of the Village of Pocahontas and any claims against her are baseless.

Section 1983 provides citizens a right to bring a private cause of action for relief from a deprivation of constitutional rights. 42 U.S.C. § 1983. Section 1983 requires, however, that the underlying constitutional deprivation involve someone acting under color of law. *Fries v. Helper,* 146 F.3d 452, 457 (7th Cir.1998). The Supreme Court has defined such an action as the "misuse of power possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *Luger v. Edmonson Oil Co.,* 457 U.S. 922, 929, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). A state actor is considered present "when the state has cloaked the defendants in some degree of authority." *Case v. Milewski,* 327 F.3d 564, 567 (7th Cir.2003). Though the requisite state actor is typically a government officer, "§ 1983 may

also be brought to bear on private individuals who exercise government power." *Payton v. Rush–Presbyterian–St. Luke's Med. Ctr.,* 184 F.3d 623, 628 (7th Cir.1999).

A private party will be deemed to have acted under "color of state law" when the state either (1) "effectively directs or controls the actions of the private party such that the state can be held responsible for the private party's decision"; or (2) "delegates a public function to a private entity." *Id.* Only in these ways can a plaintiff establish the necessary "close nexus between the state and the private conduct so that the action 'may be fairly treated as that of the State itself.'" *Wade v. Byles,* 83 F.3d 902, 905 (7th Cir.1996). The Seventh Circuit has found that private citizens are state actors only when there is a state ordinance or other authorization granting police powers. *See Payton*, 184 F.3d at 628 (finding state action where the security guards at issue were governed by a special police officer ordinance which granted them "the powers of the regular police patrol at the places for which they are respectively appointed or in the line of duty for which they are engaged); *Wade*, 83 F.3d at 903-07; *Del's Big Saver Foods, Inc. v. Carpenter Cook, Inc.,* 795 F.2d 1344, 1346 (7th Cir.1986) (finding state action where private citizens physically seized the plaintiff's property pursuant to a court order because the court order gave the private citizens the power of the Sheriff and therefore they "were in fact if not in form deputy sheriffs *pro tem* when they seized [the plaintiff's property]").

Plaintiff's § 1983 claims against Jane Lantrip will only survive if he establishes that she exercised government power during the incident. Here, there is no evidence that the state effectively directed or controlled the actions of Jane Lantrip such that the state can be held responsible for her decisions. Nor has the state delegated a public function to Jane Lantrip. The fact that Jane Lantrip accompanied her husband on the day of the incident does not make her an arm of the state. *See United States v. Shahid*, 117 F.3d 322, 326 (7th Cir. 1997)

7

More importantly, it is undisputed that Jane Lantrip was not involved in Ruger's death. Although she attempted to coax the first dog out using treats, she had no interactions with Ruger. She spent the majority of the incident waiting in her husband's truck. She did not approach the shed, did not attempt to capture Ruger and was not involved in either the decision to shoot or Ruger's shooting. Accordingly, summary judgment is granted in favor of Defendant Jane Lantrip and against Plaintiff on Plaintiff's § 1983 claim.

### B. *Michael Lantrip*

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures shall not be violated." U.S. Const. Amend. IV. A seizure of property or effects occurs when "there is some meaningful interference with an individual's possessory interests in that property." *Soldal v. Cook County*, 506 U.S. 56, 61, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992). Further, it is well-established that destroying an individual's personal property meaningfully interferes with the individual's possessory interest in that property. *United States v. Jacobsen*, 466 U.S. 109, 124-25, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984).

Plaintiff asserts that summary judgment is warranted because killing Ruger was a clear violation of the Fourth Amendment and Michael Lantrip's actions were unreasonable. Defendants concede that killing Ruger constitutes a recognized seizure under the Fourth Amendment. *See Viilo v. Eyre*, 547 F.3d 707, 710 (7th Cir. 2008)(noting that every circuit that has considered the issue has held that the killing of a companion dog constitutes a seizure within the meaning of the Fourth Amendment). Defendants contend, however, that summary judgment in their favor is warranted because Michael Lantrip's actions were objectively reasonable. Specifically, Defendants assert that Lantrip took steps to locate Plaintiff and attempted to use

non-lethal means to capture Ruger. Defendants argue that Ruger was threatening and the individuals present were justified in being concerned for their own safety. Defendants further assert that it was Deputy Jolliff who made the ultimate decision that Ruger should be shot.

Material issues of fact remain regarding whether Michael Lantrip's actions were reasonable. Although Ruger growled and raised his cackles when approached, the dog was, by all accounts, calm and non-threatening when Lantrip backed down on his attempt to capture him. At no point did Ruger attempt to bite or lunge at anyone present. Additionally, while there is testimony that Ruger was aggressive, there is no evidence that he had hurt or bitten anyone in the past.

At the summary judgment stage, it is not the Court's role to weigh the evidence, judge witness credibility, or determine the truth of a matter. *See Anderson v. Liberty Lobby, Inc,* 477 U.S. at 249-50. Instead, the Court must determine whether there is a genuine issue of material fact for trial. *See Id.* Here, based on the evidence presented, the Court cannot determine, as a matter of law, whether Michael Lantrip's shooting of Ruger was reasonable. That is for the jury to decide.

Defendants next argue that Michael Lantrip is entitled to qualified immunity because the instruction to kill Ruger came from Deputy Jolliff and Lantrip believed that Jolliff had the authority to instruct him to shoot Ruger. Qualified immunity shields government officials performing discretionary functions from civil litigation. *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). When determining whether qualified immunity shields a public official from a § 1983 action, courts undertake a two-prong inquiry. *Tolan v. Cotton,* ⸺ U.S. ⸺, 134 S.Ct. 1861, 1865, 188 L.Ed.2d 895 (2014); *Borello v. Allison*, 446 F.3d 742, 746 (7th Cir. 2006). "[U]nder either prong, courts may not resolve genuine disputes of

9

fact in favor of the party seeking summary judgment." *Tolan,* 134 S.Ct. at 1866.  Rather, courts "should define the clearly established right at issue on the basis of the specific context of the case," and "must take care not to define a case's context in a manner that imports genuinely disputed factual propositions." *Id.* (internal quotation marks omitted).

The first prong raises the question as to whether the facts show a violation of a federal right, here, the Fourth Amendment.  *Tolan*, 134 S.Ct. at 1865.  As discussed above, there are material issues of fact as to whether Lantrip violated Plaintiff's Fourth Amendment rights.  The second prong asks whether Plaintiff's Fourth Amendment rights were clearly established at the time of Lantrip's actions.  *Id*. at 1866.  That determination hinges on the salient question of whether the state of the law gave Lantrip fair warning that his shooting of Ruger was unconstitutional.  *Hope v. Pelzer,* 536 U.S. 730, 741, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002).  A right is clearly established if a "court has upheld the purported right in a case factually similar to the one under review, or that the alleged misconduct constituted an obvious violation of a constitutional right."  *Wernsing,* 423 F.3d at 742.  As the Supreme Court has explained: "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent."  *Hope,* 536 U.S. at 739. (citations omitted).

Clearly, Ruger's killing constitutes a seizure within the meaning of the Fourth Amendment.  Therefore, Lantrip's actions were constitutional only if reasonable.  The relevant and material facts upon which a determination can be made as to whether Lantrip's actions were reasonable are disputed.  As such, the Court cannot conclude that the second prong has or has not been satisfied without impermissibly treating the genuinely disputed facts as undisputed and, therefore, cannot conclude that Lantrip is entitled to qualified immunity as a matter of law.

Accordingly, both parties' motions for summary judgment are denied as to Plaintiff's Fourth Amendment claim.

### C. The Village of Pocahontas

Both parties also move for summary judgment on Plaintiff's claims against the Village of Pocahontas under 42 U.S.C. § 1983. It is well settled that a municipality cannot be held liable for the actions of individual employees under § 1983 based on a theory of *respondeat superior*. *Monell v. Department of Soc. Servs. of the City of New York,* 436 U.S. 658, 691, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Rather, in order to establish municipal liability under § 1983, the plaintiff must be able to prove (1) the existence of "an express policy that, when enforced, causes a constitutional deprivation"; (2) the existence of "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law"; or (3) an act of a "person with final policymaking authority" that causes a constitutional injury. *Roach v. City of Evansville,* 111 F.3d 544, 548 (7th Cir.1997). "Proof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell,* unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policymaker." *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823–24, 105 S.Ct. 2427, 85 L.Ed.2d 791 (1985). Additionally, the plaintiff must show a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton, Ohio v. Harris,* 489 U.S. 378, 385, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989).

Failure to train gives rise to § 1983 liability in limited circumstances. *Id.* at 387, 109 S.Ct. 1197. Inadequate police training causes § 1983 liability "only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into

contact." *Id.* at 388. Only where the failure to train reflects a deliberate or conscious choice by the municipality can it be liable for such a failure. *Id.* at 389. In this case, Plaintiff argues that the Village is liable due to a "widespread practice" of failing to train its animal control officers. Specifically, Plaintiff contends that the Village of Pocahontas provided virtually no training to any of its animal control officers and failed to provide the equipment necessary to perform the job.

In order to survive summary judgment on a failure to train claim, Plaintiff "must present evidence that the need for more or different training was so obvious and so likely to lead to the violation of constitutional rights that the policymaker's failure to respond amounts to deliberate indifference and that the deficiency in training actually caused the violation. *Viilo*, 552 F.Supp.2d 826, 843 (E.D. Wis. 2008) (citing *City of Canton*, 489 U.S. at 391). That a particular officer is unsatisfactorily trained is not enough to show municipal liability, as factors other than training could have caused that officer's shortcomings. *Id.* Nor is it sufficient to show simply that an injury could have been avoided if an officer had had certain additional training. *Id.*

Here, Plaintiff has not shown a lack of training sufficient to impose liability on the Village of Pocahontas under *Monell*. Lantrip testified that he was familiar with the use of the catchpole. Brian Handegan, the previous animal control officer, also testified that he had adequate training in dealing with dogs. Plaintiff has not produced any evidence of prior incidents similar to that alleged nor is there any evidence from which a jury could conclude that there was a widespread practice or custom of shooting loose dogs based on one unfortunate isolated incident. Accordingly, summary judgment is granted in favor of the Village of Pocahontas and against Plaintiff on Plaintiff's *Monell* claim.

**State Law Claims**

Plaintiff also asserts a conversion claim and violations of the Humane Care for Animals Act, 510 ILCS 70/1 *et seq.* against Defendants Michael and Jane Lantrip. Defendants move for summary judgment on the basis that the claims against Jane Lantrip are frivolous because she had no involvement in the death of Ruger. Defendants further contend that Michael Lantrip is entitled to immunity on Plaintiff's state law claims. Plaintiff moves for summary judgment against the Lantrips asserting that both violated the Act by shooting Ruger.

    *A. Jane Lantrip*

Plaintiff's state law claims against Jane Lantrip fail as a matter of law. Again, the undisputed facts are that Jane Lantrip was not involved in Ruger's death. There is no evidence that Jane Lantrip attempted to dominate or control Ruger. As stated previously, for the majority of the incident, she remained in the truck. She had no part in the decision to shoot or the shooting of Ruger. Thus, Plaintiff cannot succeed on a conversion claim which requires "an intentional exercise of dominion or control over a chattel." *Martel Enters. v. City of Chi.,* 584 N.E.2d 157, 159 (1991). Likewise, Plaintiff's claim under the Humane Care of Animals Act, which requires a showing of the intent to commit an act that causes a companion animal to suffer serious injury or death, fails as a matter of law. Accordingly, Jane Lantrip is entitled to summary judgment on Plaintiff's state law claims.

    *B. Michael Lantrip*

Defendants contend that Michael Lantrip is entitled to immunity under the Illinois Tort Immunity Act, 745 ILCS 10/2-202 on Plaintiff's state law claims. Section 2–202 immunizes public employees from liability in the course of execution or enforcement of the law, unless their acts constitute willful and wanton conduct. "Willful and wanton conduct" is defined as "a course

of action which shows an actual or deliberate intention to cause harm or which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1–210.  Whether Lantrip's actions can be characterized as "willful and wanton" is "ordinarily a question of fact for the jury and should rarely be ruled upon as a matter of law." *See Mostafa v. City of Hickory Hills,* 677 N.E.2d 1312, 1319 (1997).

Although Defendants assert that Lantrip acted reasonably at every step, again, that is an issue to be determined by the jury. Here, the evidence does not overwhelmingly favor the Defendants such that a judgment for the Plaintiff could not stand.  Accordingly, Defendants' motion is denied as to immunity under Section 2-202.

Defendants also argue that they are entitled to absolute immunity under Section 2-201, which immunizes policy making employees from 'an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused."  745 ILCS 10/2–201; *Harinek v. 161 N. Clark St. Ltd. P'ship*, 692 N.E.2d 1177, 1180 (1998). Pursuant to the statute, an employee may be granted immunity if he holds *either* a position involving the determination of policy *or* a position involving the exercise of discretion.  *Harinek*, 692 N.E.2d at 1181.

Immunity will not attach unless the plaintiff's injury results from an act performed or omitted by the employee in determining policy *and* in exercising discretion.  *Id*.  Thus, the employee's position may be one which involves either determining policy or exercising discretion, but the act or omission must be both a determination of policy and an exercise of discretion.  *Id*.  Here, there is no evidence that Lantrip was a policy maker and the decision to shoot Ruger was not a policy choice.  Accordingly, Section 2-201 does not afford a defense.  As

Michael Lantrip is not immune from Plaintiff's state law claims, the Court will address each claim in turn.

Under Illinois law, a claim for conversion requires that the plaintiff show "(1) a right to the property; (2) an absolute and unconditional right to the immediate possession of the property; (3) a demand for possession; and (4) that the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Van Diest Supply Co. v. Shelby County State Bank,* 425 F.3d 437, 439 (7th Cir.2005) (citing *Cirrincione v. Johnson,* 184 Ill.2d 109, 234 Ill.Dec. 455, 703 N.E.2d 67, 70 (Ill.1998)). The defining element of conversion is the extent of interference with the owner's property rights. *In re StarLink Corn Products Liab. Litig.*, 212 F. Supp. 2d 828, 844 (N.D. Ill. 2002)(citing Restatement (Second) of Torts § 222A).

In *Thurman v. Gordon*, the district court denied summary judgment to an officer who shot the plaintiff's dog. *Thurman*, 2010 WL 5369088, at *4 (N.D. Ill. Dec. 16, 2010). As is true in this case, the officer argued that he could not be held liable for conversion because he acted reasonably in putting down an animal that posed an imminent threat of death or great bodily harm to himself or others.

In denying summary judgment, the court held that because the reasonableness of the defendant's actions was a question of fact for a jury, the conversion claim could not be decided as a matter of law. *Id*; *Kay v. Cty. of Cook, Illinois*, 2006 WL 2509721, at *7 (N.D. Ill. Aug. 29, 2006) (denying defendant's motion for summary judgment as to the plaintiff's state law conversion claim for the shooting death of the plaintiff's dogs because of genuine issues of material fact regarding whether the defendant's actions were unauthorized or wrongful).

Similarly, viewing the facts and all reasonable inferences in a light most favorable to Plaintiff, there are genuine issues of material fact regarding whether Michael Lantrip's actions

were unauthorized or wrongful. Therefore, Defendants' motion for summary judgment as to Plaintiff's conversion claim is denied.

Next, Defendants assert that the Humane Care for Animal Act does not give Plaintiff a right to recovery. Plaintiff counters that the evidence establishes a violation of the Act. The Act provides that "[n]o person may intentionally commit an act that causes a companion animal to suffer serious injury or death." 510 Ill. Comp. Stat. 70/3.02(a). The Act further provides for civil liability of violators of the statute: "any person who has a right of ownership in an animal that is subjected to an act of aggravated cruelty under Section 3.02 ... may bring a civil action to recover the damages sustained by that owner." *See* 510 ILCS 70/16.3.

Defendants argue that no reported case has ever held that the Act extends to a claim against an animal control officer who, in the course of his employment, shoots a threatening dog. Defendants further assert that the "clear intent of the statute is to provide a civil remedy for people who have been victimized by criminal acts' and that "it is not intended to regulate the conduct of animal control officers." However, Defendants cite no case law or statutory support for these assertions.

The statute defines person broadly and even includes the State of Illinois or any municipal corporation. Nothing in the statute exempts animal control officers. The purpose of the Act is to allow for recovery in cases of aggravated cruelty, torture, or an animal killed in bad faith when seized or impounded. Based on a plain reading of the statute, the Court finds that whether or not Michael Lantrip violated the Act is a question of fact for the jury to determine. Accordingly, the parties' cross-motions for summary judgment on this issue are denied.

**Punitive Damages**

Finally, Defendants assert that, even if Michael Lantrip's actions were unreasonable, punitive damages are not warranted in this case. A jury may award punitive damages in a § 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Alexander v. City of Milwaukee,* 474 F.3d 437, 453 (7th Cir.2007). Whether Lantrip's conduct meets the standard to support an award of punitive damages is a question of fact for the jury. Accordingly, Defendants' motion is denied as to the issue of punitive damages.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Summary Judgment is **GRANTED** as to Plaintiff's claims against Jane Lantrip and the Village of Pocahontas. Plaintiff's claims against Jane Lantrip and the Village of Pocahontas are **DISMISSED with prejudice**. Defendants' Motion for Summary Judgment is **DENIED** as to Plaintiff's claims against Michael Lantrip. Plaintiff's Motion for Partial Summary Judgment is **DENIED** in its entirety.

**IT IS SO ORDERED.**

**DATED: April 5, 2016**

**s/ Staci M. Yandle**
**STACI M. YANDLE**
**United States District Judge**
